IMANAKA ASATO, LLLC
Steven K. S. Chung (1751)
Timothy E. Ho (4526)
745 Fort Street Mall, 17th Floor
Honolulu, HI  96813
Tel: 808/521-9500
808/541-9050 (fax)
schung@imanaka-asato.com
tho@imanaka-asato.com

BLOOD HURST & O'REARDON, LLP
Timothy G. Blood (*PHV forthcoming*)
Paula R. Brown (PHV forthcoming)
Jennifer L. MacPherson (*PHV forthcoming*)
501 West Broadway, Suite 1490
San Diego, CA  92101
Tel: 619/338-1100
619/338-1101 (fax)
tblood@bholaw.com
pbrown@bholaw.com
jmacpherson@bholaw.com

THE DAVENPORT LAW FIRM LLC
Courtney L. Davenport
18805 Porterfield Way
Germantown, MD  20874
Tel: 703/901-1660
courtney@thedavenportlawfirm.com

THE FRASER LAW FIRM, P.C.
Michael T. Fraser (*PHV forthcoming*)
4120 Douglas Blvd., Suite 306-262
Granite Bay, CA  95746
Tel: 888/557-5115
866/212-8434 (fax)
mfraser@thefraserlawfirm.net

Attorneys for Plaintiffs

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| ROMAN ANDERSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>SUBARU OF AMERICA, INC., a New Jersey corporation; SUBARU CORP., a Japanese corporation; DENSO INTERNATIONAL AMERICA, INC., a Delaware corporation; and DENSO CORP., a Japanese corporation,<br><br>Defendants. | CIVIL NO.<br><br>**CLASS ACTION COMPLAINT**<br><br><br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Roman Anderson ("Plaintiff"), individually and on behalf of all others similarly situated, upon personal knowledge of the facts pertaining to himself and on information and belief as to all other matters, by and through undersigned counsel, hereby brings this class action complaint against Defendants Subaru Corporation, Subaru of America, Inc., Denso Corporation, and Denso International America, Inc. (collectively, "Defendants") and alleges as follows:

## NATURE OF THE CASE

1.      Denso is a $47.6 billion company that claims to be a leading supplier of advanced automotive technology, systems and components for automakers. It is one of the largest suppliers of original equipment ("OE") fuel pumps to vehicle manufacturers, including to Subaru. According to Denso, its fuel "pumps are chosen as standard equipment by the world's most demanding OEMs, especially for their premium vehicles."

2.      On April 24, 2020, Denso issued a recall for defective low pressure fuel pumps it manufactured between September 1, 2017 and October 6, 2018 (the "Denso Recall"). The number of potentially affected vehicles across manufacturers is 2,020,000.

3.      Denso explains that "[a]n impeller in some low pressure fuel pumps may become deformed under certain conditions which could render the fuel pump inoperable." Specifically, if "an impeller is manufactured with a lower density, and

00165565

contains a lower surface strength or is exposed to production solvent drying for a longer period of time, higher levels of surface cracking may occur which, when excessive fuel absorption occurs, may result in impeller deformation" (the "Fuel Pump Defect").[1]

4.      The Fuel Pump Defect is a safety hazard. Denso warns that "an inoperative fuel pump may result in the illumination of the check engine light and/or master warning indicators, rough engine running, engine no start and/or vehicle stall while driving at low speed and, in rare instances, a vehicle stall could occur while driving at higher speeds, increasing the risk of a crash."[2]

5.      Denso says it notified affected vehicle manufacturers and that it is up to each manufacturer to conduct recalls, as necessary, to replace the fuel pumps. The recall schedule and any remedy program must be determined by each vehicle manufacturer.

6.      On April 16, 2020, a few days before Denso issued its recall, Subaru recalled 188,207 vehicles because of the Fuel Pump Defect (the "Subaru Recall"). Recalled vehicles include the 2019 Impreza, Ascent, Legacy and Outback.

7.      However, Subaru did not recall all vehicles manufactured with fuel pumps made in Denso's specified time frame. Instead, Subaru limited its recall to

---

[1]      https://static.nhtsa.gov/odi/rcl/2020/RCLRPT-20E026-9105.PDF

[2]      *Id.*

2

only those vehicles equipped with a low pressure fuel pump manufactured by Denso during the four-month period, April 2018 to July 2018, despite that Denso recalled fuel pumps manufactured over a thirteen-month period.

8.     In addition, while Denso broadly identified the defect as impellers manufactured with a lower density that have either a lower surface strength or were overexposed to solvent drying, both of which could result in impeller deformation and fuel pump failure, the Subaru Recall excludes lower density impellers made with a lower surface strength. The Subaru Recall improperly applies only to lower density fuel pumps exposed to solvent drying for longer periods of time. Subaru gives no reason why it limited its recall in this manner despite Denso's broader recall.

9.     Like Denso, Subaru recognizes serious safety issues accompany the Fuel Pump Defect. Subaru warns that an inoperative low pressure fuel pump may cause the check engine warning light or malfunction indicator light to illuminate, the engine to run rough, and worst case, the engine may stall without the ability to restart the vehicle, increasing the risk of a crash. Nevertheless, Subaru delayed warning owners and lessees of recalled vehicles about the Fuel Pump Defect.

10.     Subaru also failed to include all vehicles affected by the Fuel Pump Defect in its recall. Likewise, even though Denso's recall is broader than Subaru, it too improperly limited its recall by failing to include all defective low pressure fuel

3

00165565

pumps. Reports of faulty fuel pumps and problems associated with inoperative fuel pumps, such as vehicles stalling while driving, have been made by owners and lessees to the National Highway Traffic Safety Administration ("NHTSA") dating back to 2015, or earlier. Additionally, at least one other manufacturer that uses Denso's fuel pumps has recalled vehicles made as early as 2013 for the same Fuel Pump Defect involving Denso low pressure fuel pumps that were made with a lower density.

11.    Accordingly, Denso and Subaru's recalls are improperly narrow. All makes, models and years of Subaru vehicles that are equipped with the same dangerous and defective low pressure fuel pump supplied by Denso should be recalled. These models and model years include the 2015-2019 Subaru Impreza, Ascent, Legacy, Outback, Forester, Crosstrek and WRX. (collectively, the "Subject Vehicles"). Plaintiff brings this class action on behalf of owners and lessees of Subject Vehicles that are equipped with defective Denso low-pressure fuel pumps.

## JURISDICTION AND VENUE

12.    The Court has jurisdiction over Plaintiff's claims pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because: (a) this action is brought as a proposed class action under Fed. R. Civ. P. 23; (b) the proposed Class includes more than 100 members; (c) many of the proposed Class members are citizens of

states that are diverse from Defendants' citizenship; and (d) the matter in controversy exceeds $5,000,000, exclusive of interest and costs.

13.    This Court has personal jurisdiction over the Subaru entities because Subaru conducts business in Hawaii including by advertising, distributing and selling the Subject Vehicles. Subaru routinely conducts business in this District and some of the actions giving rise to this action took place in this District and/or caused injury to property in this state; and products, materials, or things processed, serviced, or manufactured by Subaru anywhere were used or consumed in this state in the ordinary course of commerce, trade, or use. Subaru has, at all relevant times, conducted and continues to conduct business in Hawaii, and every other state in the country.

14.    This Court has personal jurisdiction over the Denso entities because Denso routinely conducts business in this District and some of the actions giving rise to this action took place in this District and/or caused injury to property in this state; and products, materials, or things processed, serviced, or manufactured by Denso anywhere were used or consumed in this state in the ordinary course of commerce, trade, or use. Vehicles all over the world, including this District, are equipped with Denso parts, including the Fuel Pump. Denso has, at all relevant times, conducted and continues to conduct business in Hawaii, and every other state in the country.

00165565

15.    Venue is proper in this judicial District under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the conduct alleged herein occurred in, were directed to, and/or emanated from this District. Venue is also proper because Defendants transact business in this District.

## PARTIES

**Plaintiff**

16.    Plaintiff Roman Anderson is a citizen of Hawaii and resides in Laupāhoehoe, Hawaii. In or about Spring 2019, Plaintiff purchased a Subaru-certified pre-owned 2017 Subaru Outback with approximately 17,000 miles from Big Island Motors in Hilo, Hawaii. He purchased the vehicle primarily for personal, family, or household purposes. Plaintiff's 2017 Outback was distributed, sold, leased, advertised, marketed and warranted by Subaru and bears the Vehicle Identification No. 4S4BSACC5H3335520. Plaintiff purchased an extended warranty for the vehicle.

17.    Safety was a primary factor in Plaintiff's decision to buy his car. His decision to purchase a Subaru was based in large part on the years-long advertising campaign to which he had been exposed through various media where he heard and read numerous advertisements promoting Subaru's leadership and commitment to designing and building cars that are safe and reliable. In addition, prior to purchasing his Outback, Plaintiff reviewed Subaru's sales and promotional

6

materials, including Subaru's brochure and website for the Outback. All of Subaru's materials reinforced Subaru's branding the vehicle as being safe and reliable. He also researched his vehicle online by looking at Subaru forums where owners discussed their experience with the Outback. Plaintiff test drove the Outback (and Crosstrek) at the Subaru-authorized dealership, spoke with the dealer sales representative, viewed the sticker posted on the side window of the vehicle, and other materials. None of these indicated his vehicle may have a Fuel Pump Defect. Plaintiff had a reasonable expectation that the vehicle he purchased was safe and reliable.

18.     Plaintiff's vehicle exhibits the Fuel Pump Defect. In and around May 2020, Plaintiff's vehicle experienced engine no start twice in one week. He was able to restart the vehicle but only after multiple attempts. A year earlier, in approximately November 2019, his vehicle stalled as he waited at a stop sign.

19.     Plaintiff's vehicle was not included in the recall. As such, he will not benefit from any corrective remedy under the recall. Because repairs of a fuel pump often require replacement of the entire fuel pump assembly, which can cost as much as $1,000, Plaintiff has not had the vehicle repaired.

20.     At all relevant times, Plaintiff has driven the vehicle in a foreseeable manner and the manner in which it was intended to be used. Plaintiff would not

have purchased his 2017 Outback if Subaru had disclosed the Fuel Pump Defect or would have only agreed to purchase the vehicle at a substantially reduced price.

**Defendants**

21.    Defendant Subaru of America, Inc. is a New Jersey Corporation with its principal place of business at One, Subaru Drive, Camden, New Jersey 08103. Subaru of America, a wholly-owned subsidiary of Subaru Corporation, is responsible for the design, manufacture, distribution, sale, lease, and marketing of the Subject Vehicles in Hawaii and throughout the United States. It has a nationwide dealership network and operates offices and facilities throughout the United States.

22.    Defendant Subaru Corporation is a Japanese corporation with its principal place of business in Shibuya-ku, Tokyo, Japan, and is the parent company of Subaru of America. Through its various entities (including Subaru of America), Subaru Corporation designs, manufactures, markets, distributes and sells Subaru automobiles in the United States, including Hawaii. Throughout the Complaint Subaru Corporation and Subaru of America, Inc. are collectively referred to as "Subaru."

23.    Denso International America, Inc. ("DIAM") is a Delaware corporation with its principal place of business at 24777 Denso Drive, Southfield, Michigan 48033. DIAM employs over 17,000 employees across 13 states and

00165565

25 sites. In fiscal year ending March 31, 2019, DIAM generated $10.9 billion in consolidated sales. DIAM is 100% owned by its Japanese parent company, Denso Corporation. It is Denso Corporation's North American regional headquarters and parent company for its North American operations, including design and production engineering, technical support, sales and finance.

24.     Denso Corporation is a $48.3 billion global supplier of advanced technology and components for nearly every vehicle make and model on the road today. Denso Corporation invests in its 221 facilities in 35 countries to produce thermal, powertrain, mobility, electrification, and electronic systems. Denso has over 170,000 employees worldwide and is globally headquartered in Kariya, Japan. Denso is 100% owner of at least 10 subsidiaries in the United States, including DIAM. Throughout the Complaint DIAM and Denso Corporation are collectively referred to as "Denso."

## FACTUAL BACKGROUND

## I.     DENSO LOW PRESSURE FUEL PUMPS

25.     Denso is a leading supplier of OE fuel pumps and fuel pump modules to major automakers, including Subaru. According to its website, Denso recorded nearly $50 billion in consolidated net sales in 2019.

26.     Fuel pumps transfer gas from the fuel tank and pressurize and deliver it to the engine. Denso explains the role of the electric fuel pump as "deliver[ing]

9

fuel from the tank to the engine, under high pressure, depending on the vehicle application's specific requirements. The fuel is transported to fuel injectors, which spray the fuel into the engine cylinders."[3]

27.     Fuel pumps are designed to last at least 100,000 miles.[4] Denso claims its fuel pumps "offer more than triple the lifetime[.]"[5]

28.     The fuel delivery system relies on two pumps to supply fuel to the engine: a low pressure fuel pump and high pressure fuel pump. Denso refers to these as the in-line (high pressure) and in-tank (low pressure) pumps.

29.     The in-take fuel pump is mounted inside the fuel tank and pumps fuel from the fuel tank to the engine by supplying fuel pressure to the fuel injection system. An impeller, located under the pump motor, is a key component of the low pressure fuel pump.  The impeller is a plastic disk that rotates and draws in fuel and pushes it up through the pump.[6] Denso's in-tank fuel pump looks like this:[7]

---

[3]      https://www.denso-am.eu/products/automotive-aftermarket/ignition/fuel-pumps/

[4]      https://www.yourmechanic.com/article/how-long-does-a-fuel-pump-usually-last

[5]      https://densoautoparts.com/fuel-pumps.aspx

[6]      https://www.denso-am.co.uk/products/automotive-aftermarket/ems-lambda-sensor/fuel-pumps/how-they-work/

[7]      https://aftermarket.denso.com.sg/product_info/?cat_id=194

00165565



30.   Denso describes the operation of its in-take fuel pump as "[w]hen the impeller of an in-tank [f]uel [p]ump rotates, the blade moves around the impeller, creating a swirling motion inside the pump to deliver fuel. The fuel then passes around the motor, forcing the check valve upwards to supply fuel to the fuel pipe."[8]

31.   The inside of a Denso impeller and Denso's depiction of the fuel pump operation is displayed below:[9]





---

[8]      https://www.denso-am.eu/media/966284/dems180001mm-lr.pdf

[9]      *Id*.; https://densoautoparts.com/fuel-pumps.aspx

00165565

32.     Fuel pump failure can have serious consequences. Denso's materials identify the symptoms of a faulty in-tank fuel pump as:

- **Difficult Start Up:** The engine is unable to operate due to insufficient fuel supplied to the engine from the fuel tank.

- **Engine Stalling:** Engine starts to stall after start-up because the fuel pump is unable to deliver enough fuel to the engine. This might happen even when the gas pedal is pressed.

- **Poor Drivability:** Insufficient flow rate of fuel leads to weak acceleration of the car. The fuel pressure is not enough to supply required fuel to the system.

- **"Check Engine" Light is on:** This symptom shows there is something wrong with the engine. One of the factors could be due to malfunction of fuel pump.[10]

## II.     DENSO'S RECALL OF LOW PRESSURE FUEL PUMPS

33.     On April 24, 2020, Denso International America, Inc. issued a safety recall for low pressure fuel pumps it manufactured between September 1, 2017 and October 6, 2018.[11] It estimates the potential number of units affected at 2,020,000.

34.     According to Denso "[a]n impeller within the low pressure fuel pump may crack and deform, potentially causing the fuel pump to fail." If "an impeller is manufactured with a lower density, and contains a lower surface strength or is exposed to production solvent drying for a longer period of time, higher levels of

---

[10]     https://aftermarket.denso.com.sg/product_info/?cat_id=194

[11]     https://static.nhtsa.gov/odi/rcl/2020/RCLRPT-20E026-9105.PDF

surface cracking may occur which, when excessive fuel absorption occurs, may result in impeller deformation."

35.     Denso's recall notice explains that if an impeller deforms to a point that creates sufficient interference with the fuel pump body, the fuel pump becomes inoperative. An "inoperative fuel pump may result in the illumination of the check engine light and/or master warning indicators, rough engine running, engine no start and/or vehicle stall while driving at low speed and, in rare instances, a vehicle stall could occur while driving at higher speeds, increasing the risk of a crash."

36.     Denso notified affected vehicle and aftermarket equipment manufacturers whose responsibility it is to conduct recalls as necessary to replace the fuel pumps. Denso claims that the impeller of fuel pumps used for a remedy component have a higher density.

37.     Denso supplies low pressure fuel pumps to Subaru, which it notified of the defect. Denso's recall notice identified Subaru OE low pressure fuel pumps with the following part numbers as being subject to the Denso Recall: 291100112; 291100113; 291100119; 291100166; 291100170; 291100190. These are Denso's part numbers – Subaru assigns its own numbers to the same parts.

00165565

## III.   SUBARU'S LIMITED RECALL OF DENSO LOW PRESSURE FUEL PUMPS

38.    On April 16, 2020, eight days before Denso initiated its recall of low pressure fuel pumps, Subaru of America issued its own recall. Subaru's recall notice identifies the component manufacturer as Denso International America, Inc. According to Subaru the number of potentially affected vehicles is 188,207.

39.    Subaru describes the defect as "[t]he affected vehicles may be equipped with a low pressure fuel pump produced during a specific timeframe which includes an impeller that was manufactured with a lower density. If the surface of the lower density impeller is exposed to solvent drying for longer periods of time, it may develop fine cracks. Those cracks may lead to excessive fuel absorption, resulting in impeller deformation. Over time, the impeller may become deformed enough to interfere with the body of the fuel pump, potentially causing the low pressure fuel pump to become inoperative."

40.    Signs of an inoperative fuel pump are "the check engine warning light or malfunction indicator light may illuminate, and/or the engine may run rough.  In the worst case, an inoperative fuel pump may result in the engine stalling without the ability to restart the vehicle, increasing the risk of a crash." Subaru did not mention that the problem could also cause stalling at low speeds, which Denso asserted as one of the safety concerns in its own recall.

14

00165565

41.    The Subaru Recall include is limited to the following makes and models produced during the specified dates:

- 2019 Impreza (produced June 18, 2018 to February 25, 2019)

- 2019 Ascent (produced June 26, 2018 to January 18, 2019)

- 2019 Legacy (produced June 29, 2018 to February 19, 2019)

- 2019 Outback (produced June 29, 2018 to February 19, 2019)

42.    According to Subaru, the recall population includes 28,050 model year 2019 Impreza station wagons and 12,747 Impreza 4-Door vehicles manufactured between June 18, 2018 and February 25, 2019; 86,278 Outback vehicles and 20,182 Legacy vehicles manufactured between June 29, 2018 and February 19, 2019; and 40,950 Ascent vehicles produced June 26, 2018 to January 18, 2019.

43.    Not all vehicles with fuel pumps manufactured in Denso's specified production range were recalled. Also, Subaru says it must confirm coverage for each vehicle.

44.    For potentially affected vehicles, Subaru will replace the low pressure fuel pump with an improved part at no cost. Purportedly, remedy components have a fuel pump impeller with a higher density.

00165565

## IV.   SUBARU'S RECALL IS INADEQUATE

45.   The Fuel Pump Defect poses a serious safety risk.  Denso and Subaru both recognize that inoperative fuel pumps may cause vehicles to stall while driving, putting drivers, occupants and other vehicles on the road at risk of being involved in a serious crash.

46.   Despite this risk, Subaru's recall fails to include all potentially affected vehicles, exposing owners and lessees to serious injury or death from faulty fuel pumps.

47.   Denso's recall states that unsafe surface cracking may result if an impeller is (1) manufactured with a lower density *and* (2) contains a lower surface strength *or* is exposed to production solvent drying for a longer period of time. Denso claims defective pumps were manufactured during the thirteen-month period, September 1, 2017 to October 6, 2018.

48.   Subaru's recall does not account for fuel pumps made with a "lower surface strength," which Denso identifies as an element of the defect that can lead to pump failure. Instead, Subaru recalled only pumps made with an impeller that was produced with a lower density and also exposed to solvent drying for longer periods of time. For reasons not stated, Subaru excluded pumps manufactured with a lower surface strength.

16

00165565

49.     By comparison, on January 13, 2020, Toyota issued a recall for defective Denso low pressure fuel pumps. Toyota's Amended Defect Information Report,[12] dated March 4, 2020, outlines its investigation into the Fuel Pump Defect and reveals that impeller swelling and deformation were observed not only in impellers made with a lower density and which were exposed to production solvent drying for longer periods of time, but also in low density impellers that had a lower surface strength. Toyota explained that it:

> [O]bserved that some field cases involved impellers that had low density with similar cracks to other field cases, but experienced shorter lead times to the vehicle assembly plant (i.e., were not exposed to drying solvent for longer periods of time during production in the same manner as the pumps investigated above). Thus, Toyota investigated a second factor, which was the surface strength of different pump impeller types. Analyses were performed on impeller samples from the pump types that may have been produced with lower density material. These analyses identified that the surface strength was low on one particular type. Impellers of this type, produced with the lower density material, can experience higher levels of surface cracking even when exposed to shorter durations of solvent drying.

> Based on the above activities, Toyota concluded that pumps produced with impellers of lower density that also contain either (1) a pump impeller of a type with lower surface strength or (2) a pump impeller that was exposed to production solvent drying for longer periods of time could experience the impeller cracking at a level that could lead to excessive fuel absorption and

> increased impeller deformation. If impeller deformation results in sufficient interference with the fuel pump body, the fuel pump may become inoperative.

---

[12]     https://static.nhtsa.gov/odi/rcl/2020/RMISC-20V012-9970.pdf

00165565

50.    As a result of the above investigation, Toyota expanded its recall. Initially, Toyota recalled multiple model year 2018-2019 vehicles with fuel pumps manufactured by Denso between August 1, 2018 and January 31, 2019.[13] Two months later, Toyota expanded the recall to include model year 2013-2017 vehicles with fuel pumps made as early as September 2, 2013, asserting that the pumps "were produced with impellers of lower density" and contained either lower surface strength *or* exposure to solvent drying for too long.[14]

51.    Toyota's analysis is noteworthy considering that it owns 25 percent of Denso Corporation, the parent company of Denso International America, Inc., and has numerous and ongoing joint ventures with Denso for research and development of new vehicle technology and components. In 2019, Toyota also increased its ownership of Subaru Corporation to 20 percent, making it a Subaru affiliate. Thus, Subaru is aware of Toyota's extended recall and the implications it has for Subaru's own Denso fuel pumps.

52.    Further, while Denso recalled fuel pumps manufactured between September 1, 2017 and October 6, 2018, Subaru only recalled vehicles equipped with fuel pumps manufactured during the four-month period, April 2018 and July

---

[13]    https://static.nhtsa.gov/odi/rcl/2020/RCLRPT-20V012-4479.PDF

[14]    https://static.nhtsa.gov/odi/rcl/2020/RCLRPT-20V012-7857.PDF

00165565

2018. This is so despite Subaru acknowledging Denso did not begin using fuel pumps with a higher density impeller until July 2019.

53.    Subaru's recall, which is limited to the 2019 Impreza, Ascent, Legacy and Outback with specified part numbers, excludes other makes, models and years that were equipped with the same defective low pressure fuel pumps.

54.    Specifically, Subaru's Product Campaign Bulletin (dated April 29, 2020) sent to dealers lists affected part numbers as follows:[15]



| Description | Part Number | Application | Required 1-Time Use Parts: |
| --- | --- | --- | --- |
| PUMP ASSY FUEL | 42021AL02C | Legacy / Outback 2.5L | 42025AL040 O-Ring |
| | 42021AL03C** | Legacy / Outback 3.6L | 42043AL000 Cushion |
| | 42021FL02B | Impreza | 42025FL01A O-Ring |
| | 42021XC00A | Ascent | 42025FL000 O-Ring |
| | | | 42057FL000 Cushion Plate |
| | | | 14497AA080 and 21896AA130 Intercooler Gaskets |

55.    But Subaru's Genuine Subaru Parts website shows that fuel pump part numbers 42021AL02C and 42021AL03C are also used in, for example, model year 2015-2019 Subaru Outback and Legacy vehicles.[16] Subaru offered no explanation for why fuel pumps with the same part numbers, including the fuel pump in the subject 2017 Outback, were excluded from the recall. Further, Plaintiff reasonably

---

[15]    https://static.nhtsa.gov/odi/rcl/2020/RCRIT-20V218-8906.pdf

[16]    https://parts.subaru.com

00165565

believes that other makes, models and years of Subaru vehicles have the same Fuel Pump Defect based on NHTSA reports going back to at least 2015 that show owners and lessees complaining of vehicles stalling while driving.

56.    Since at least 2015, Subaru owners and lessees have reported problems with engine stall while driving, the most dangerous indicator of an inoperative fuel pump.  Similar complaints made to NHTSA are indicative that other makes, models and years were manufactured with the same defective Denso fuel pump.

57.    Below are example complaints filed with NHTSA that demonstrate the Fuel Pump Defect is more widespread than the 2019 Impreza, Ascent, Legacy, Outback:[17]

| Subaru Crosstrek Complaints, Model Years 2015-2019 |
|---|

**NHTSA ID Number: 11051438**
**Incident Date: November 8, 2017**
**Model:  2015 Crosstrek**

ENGINE STALLED WITHOUT WARNING WHILE DRIVING ON HIGHWAY

**NHTSA ID Number: 11232199**
**Incident Date: July 11, 2019**
**Model:  2015 XV CROSSTREK**

WAS DRIVING . . ., WHEN SUDDENLY THE VEHICLE LOST ACCELERATION, THE RPMS WENT LOW, AND THE VEHICLE

---

[17]    All complaints to NHTSA have been reproduced as originally written and may contain spelling or grammatical errors.

DIED. NO WARNING LIGHTS OR INDICATIONS OF A PROBLEM BEFORE THE EVENT. . .TOW INTO THE DEALER. FUEL PUMP FAILURE WAS DETERMINED TO BE THE CAUSE.

**NHTSA ID Number: 11242454**
**Incident Date: August 1, 2019**
**Model: 2015 Crosstrek**

THE CONTACT OWNS A 2015 SUBARU CROSSTREK. WHILE DRIVING 80-85 MPH, THE VEHICLE STALLED ON SEVERAL OCCASIONS WITHOUT WARNING

**NHTSA ID Number: 11119786**
**Incident Date: August 9, 2018**
**Model:  2015 Crosstrek**

CAR STALLED AND DIED WHILE DRIVING ON FREEWAY TRAVELING 75MPH. FELT LIKE THE TRANSMISSION SHIFTED INTO A LOW GEAR AND THE RPM'S REVVED. CAR IMMEDIATELY LOST POWER . . . EXACT SAME SYMPTOMS HAPPENED TO THE SAME VEHICLE 6 MONTHS AGO. CAR DIED ON FREEWAY TRAVELING 75MPH . . . THE ENGINE DIED 3 OTHER TIMES WHILE DRIVING AT LEAST 45MPH[.]

**NHTSA ID Number: 11292354**
**Incident Date: December 3, 2019**
**Model: 2018 Crosstrek**

THE CAR ENGINE HAS STALLED 4 TIMES SINCE JULY WHEN WIFE WAS ACCELERATING ONTO A MAIN STREET OR THROUGH AN INTERSECTION, TURNING FROM A STOP.

**NHTSA ID Number: 11170789**
**Incident Date: June 3, 2018**
**Model: 2018 Crosstrek**

THE CONTACT OWNS A 2018 SUBARU CROSSTREK. WHILE DRIVING AT LOW SPEEDS, THE VEHICLE STALLED AND

00165565

WAS REAR ENDED

**NHTSA ID Number: 11234224**
**Incident Date: July 14, 2019**
**Model: 2019 Crosstrek**

CAR HESITATES AND STALLS OUT AT SLOW SPEEDS AND HAS STALLED WHILE PULLING OUT INTO A INTERSECTION.

**NHTSA ID Number: 11289092**
**Incident Date: December 3, 2019**
**Model: 2019 Crosstrek**

I WAS DRIVING IN TRAFFIC TO COMPLETE STOP, AS I WAS ACCELERATING THE VEHICLE STALLED

**Subaru Forester Complaints, Model Years 2015-2019**

**NHTSA ID Number: 11288567**
**Incident Date: December 9, 2019**
**Model:  2015 Forester**

CAR WILL STALL AT LIGHT AND STALL ON FREEWAY CAUSING ME TOO LOOSE CONTROL IT WILL ALSO JUST TURN OFF AT HIGH SPEED AND SOMETIMES WHEN STOPED

**NHTSA ID Number: 11003831**
**Incident Date: June 17, 2017**
**Model:  2015 Forester**

ENGINE STALL AT HIGHWAY SPEEDS. THIS HAS OCCURRED TO ME ON TWO SEPARATE OCCASIONS.

**NHTSA ID Number: 11265857**
**Incident Date: September 28, 2019**
**Model: 2015 Forester**

00165565

THE CONTACT OWNS A 2015 SUBARU FORESTER. WHILE DRIVING APPROXIMATELY 70-75 MPH, THE FUEL GAUGE INDICATOR DISPLAYED APPROXIMATELY 50 MILES TO EMPTY AND THE VEHICLE STALLED WITHOUT WARNING. THE CONTACT WAS ABLE TO RESTART THE VEHICLE

**NHTSA ID Number: 11280656**
**Incident Date: November 17, 2019**
**Model: 2015 Forester**

CAR STALLED WHILE DRIVING, WITH NO LIGHTS LIT UP ON THE DASHBOARD. HAPPENED TWICE, ONCE AT 5 MPH AND AGAIN AT 25 MPH. THE TWO TIMES IT HAPPENED WERE ABOUT THREE MINUTES APART THIS MORNING

**NHTSA ID Number: 11318234**
**Incident Date March 13, 2020**
**Model:  2015 Forester**

CONTACT CALLED ON BEHALF OF HER FATHER WHO OWNS A 2015 SUBARU FORESTER. THE CONTACT STATED THAT WHILE DRIVING AT A SLOW SPEED, THE VEHICLE STALLED WITH THE CHECK ENGINE WARNING LIGHT ILLUMINATED. THE CONTACT WAS UNABLE TO RESTART THE VEHICLE. . . THE CONTACT WAS INFORMED THAT THE VEHICLE WAS NOT SUBJECTED TO A RECALL.

**NHTSA ID Number: 11154770**
**Incident Date: November 22, 2018**
**Model: 2015 Forester**

MY 2015 FORESTER STALLED WHILE DRIVING IN THE MIDDLE LANE ON THE NJ PARKWAY (GOING ABOUT 65-70MPH.)

**NHTSA ID Number: 11057652**
**Incident Date: December 22, 2017**
**Model: 2015 Forester**

23

ON TWO OCCASIONS: TRAVELING AT APPROX 65- 70MPH THE ENGINE SUDDENLY STALLS AND WE HAVE BEEN FORCED TO STOP ON THE SHOULDER.

**NHTSA ID Number: 10919048**
**Incident Date: September 17, 2016**
**Model:  2015 Forester**

ON TWO DIFFERENT OCCASIONS, MY CAR STALLED WHILE DRIVING ON THE HIGHWAY. THE ENGINE STOPPED RUNNING AND I HAD TO COAST TO THE SIDE OF THE ROAD.

**NHTSA ID Number: 10898057**
**Incident Date: August 20, 2016**
**Model:  2015 Forester**

WHILE DRIVING 75-80 MPH ON THE INTERSTATE, I LOST THE ABILITY TO ACCELERATE. LUCKILY I WAS ABLE TO CHANGE LANES (I WAS IN THE MIDDLE LANE WHEN I LOST POWER) AND PULL OVER. ALL THE LIGHTS WERE ON (CHECK ENGINE, AT OIL TEMP, BATTERY,ECT) AND WHAT I WAS ABLE TO STOP THE CAR, IT STALLED

**NHTSA ID Number: 10896488**
**Incident Date: July 14, 2016**
**Model:  2016 Forester**

THE CONTACT OWNS A 2016 SUBARU FORESTER. WHILE DRIVING 50 MPH, THE VEHICLE STALLED AND WAS ABLE TO BE RESTARTED AFTER SOME TIME. THE FAILURE RECURRED ON NUMEROUS OCCASIONS.

**NHTSA ID Number: 10895441**
**Incident Date: May 12, 2016**
**Model:  2016 Forester**

THE CONTACT OWNS A 2016 SUBARU FORESTER. WHILE DRIVING VARIOUS SPEEDS AND ATTEMPTING TO

24

ACCELERATE, THE ENGINE STALLED, MISFIRED, AND HESITATED WITHOUT WARNING.

**NHTSA ID Number: 10885629**
**Incident Date: July 18, 2016**
**Model: 2016 Forester**

THREE TIMES OVER THE PAST 2 WEEKS MY VEHICLE HAS AT HIGHWAY SPEEDS.

**NHTSA ID Number: 11048323**
**Incident Date: November 24, 2017**
**Model:  2016 Forester**

I'VE HAD THIS CAR FOR 1.5 YEARS AND IT'S ALREADY STALLED TWICE TIMES. BOTH TIMES I WAS DRIVING ON THE HIGHWAY AND WITHOUT ANY WARNING MY CAR JUST STARTED TO RAPIDLY DECREASE SPEED.

**NHTSA ID Number: 11150304**
**Incident Date: January 16, 2018**
**Model: 2016 Forester**

I HAVE AN ISSUE WHERE THE ENGINE WILL FLUTTER IN IDLE AND WILL ALMOST SKIP AS IF IT'S NOT GETTING ANY GAS. THE FLUTTER CAUSES THE CAR TO SHAKE, IT HAS EVEN CAUSED THE CAR TO STALL. WHEN IT STALLED I HAD STARTED THE CAR, PUT IT IN DRIVE, TAPPED THE GAS AND THE ENGINE CUT OUT AND SHUT OFF.

**NHTSA ID Number: 11218540**
**Incident Date: June 3, 2019**
**Model: 2016 Forester**

ON TWO DIFFERENT OCCASIONS 24 HOURS APART THE CAR STALLED (SEEMED TO DROP INTO NEUTRAL) AT HIGHWAY SPEEDS ~80MPH . . . ONCE ON THE SIDE OF THE ROAD IN PARK THE ENGINE DIED.

25

**NHTSA ID Number: 11311652**
**Incident Date September 1, 2019**
**Model: 2017 Forester**

THE CONTACT OWNS A 2017 SUBARU FORESTER. WHILE DRIVING APPROXIMATELY 70 MPH THE VEHICLE SUDDENLY STALLED. . . THE CONTACT STATED THAT THE VEHICLE WOULD NOT ACCELERATE WHEN PRESSING THE ACCELERATOR PEDAL. WHILE DRIVING, THE SPEED WAS SUDDENLY REDUCED. AFTER TURNING THE VEHICLE OFF AND RESTARTING THE ENGINE, THE VEHICLE OPERATED AS NORMAL.

**NHTSA ID Number: 11306742**
**Incident Date November 19, 2019**
**Model: 2017 Forester**

THE CONTACT OWNS A 2017 SUBARU FORESTER. THE CONTACT STATED WHILE DRIVING AT 15 MPH, THE VEHICLE STALLED WITHOUT WARNING. THE CONTACT WAS ABLE TO RESTART THE VEHICLE.

**NHTSA ID Number: 11103515**
**Incident Date: June 17, 2018**
**Model: 2017 Forester**

WE HAVE A 2017 FORESTER SUBARU 2.5I WITH 12,548 MILES. THE SUV WILL RANDOMLY JERK, JUMP AND HAS STALLED IN HWY & CITY TRAFFIC TWICE

**NHTSA ID Number: 11092568**
**Incident Date: April 22, 2018**
**Model: 2017 Forester**

ON APRIL 22, 2018, MY 2017 FORESTER WITH 22,000 MILES ON IT STALLED IN THE CARPOOL LANE OF A BUSY LA FREEWAY [] TRAFFIC IN THE LANE HAD COME TO A COMPLETE STOP AND WHEN IT PICKED UP AGAIN, THE ENGINE STALLED.

26

**NHTSA ID Number: 11114000**
**Incident Date: July 25, 2018**
**Model: 2018 Forester**

MY 2018 SUBARU FORESTER XT SHUT OFF WHILE DRIVING 2 TIMES ON 7/26/18 . . . UST SHUT OFF WHILE DRIVING. AND CAME TO A SUDDEN STOP IN A MATTER OF SECONDS -I WAS GOING 40 MPH

**NHTSA ID Number: 11282288**
**Incident Date: December 15, 2018**
**Model:  2018 Forester**

THE CONTACT OWNS A 2018 SUBARU FORESTER. WHILE DRIVING VARIOUS SPEEDS, THE VEHICLE STALLED AND SOMETIMES LOST POWER. THE VEHICLE RESTARTED AFTER IT WAS SHUT OFF. THERE WAS NO WARNING INDICATOR ILLUMINATED.

**NHTSA ID Number: 11270696**
**Incident Date: October 18, 2019**
**Model: 2019 Forester**

THE CONTACT OWNS A 2019 SUBARU FORESTER. WHILE TRAVELING 20 MPH, THE VEHICLE STALLED AND SHUT OFF WITHOUT WARNING. THE CONTACT ATTEMPTED TO RESTART THE VEHICLE, BUT WAS UNSUCCESSFUL.

**Subaru Outback Complaints, Model Years 2015-2019**

**NHTSA ID Number: 11245466**
**Incident Date: August 20, 2019**
**Model: 2017 Outback**

CAR STALLED (4X'S AT LEAST) WHEN MAKING TURNS; STALLED AFTER PASSING A CAR WHEN I RETURNED TO MY LANE WITH HIGH SPEED TRAFFIC BEHIND ME. HAVE HAD THIS PROBLEM SINCE WE PURCHASED CAR.

27

**NHTSA ID Number: 11208473**
**Incident Date: May 18, 2019**
**Model: 2017 Outback**

IN TWO SEPARATE EVENTS THE CAR LOST POWER WHILE ACCELLORATING AT HIGHWAY SPEEDS TO MERGE INTO TRAFFIC FROM A STAND STILL. THE GAS PEDAL BECAME UNRESPONSIVE AND THE TRANMISSION STOPPED SHIFTING. IN THE FIRST INCIDENT THE ENGINE STALLED, AND IN THE SECOND IT SPUTTERED AND ALMOST DIED DURING A HEAVY MERGE ON AN ON RAMP.

**NHTSA ID Number: 11081469**
**Incident Date: March 27, 2018**
**Model: 2018 Outback**

I WAS DRIVING MY CHILD TO SCHOOL ON A RAINY MORNING IN TRAFFIC,20-30MPH ON A STRAIGHT ROAD. THE CAR STALLED AND THEN THE ENGINE SHUT OFF.

**Subaru WRX Complaints, Model Years 2015-2019**

**NHTSA ID Number: 11151074**
**Incident Date: September 10, 2017**
**Model:  2015 WRX STI**
DRIVING DOWN THE ROAD AT APPROX 30MPH HEARD A NOISE, CAR AND WOULD NOT START BACK UP[.]

**NHTSA ID Number: 11099429**
**Incident Date: June 3, 2018**
**Model: 2016 WRX**

I WAS DRIVING DOWN THE HIGHWAY AND THE CAR LOST A LITTLE POWER START TO SLOW DOWN TILL IT EVENTUALLY STALLED OUT AND NOW IT STARTS BUT DOES NOT STAY RUNNING.

**NHTSA ID Number: 11098135**

00165565

**Incident Date: May 25, 2018**
**Model:  2016 WRX**
AFTER LEAVING WORK AND DRIVING LESS THAN ONE MILE, THE VEHICLE'S ENGINE STALLED WHILE APPROACHING A CONTROLLED INTERSECTION.

| Subaru Impreza Complaints, Model Years 2015-2019 |
| --- |

**NHTSA ID Number: 11051576**
**Incident Date: November 21, 2017**
**Model:  2015 Impreza**

THE CONTACT OWNS A 2015 SUBARU IMPREZA. WHILE DRIVING 35 MPH, THE VEHICLE STALLED WITHOUT WARNING.

**NHTSA ID Number: 11064197**
**Incident Date: January 21, 2018**
**Model:  2017 Impreza**

MY CAR STALLED 3X YESTERDAY, 1/21/2017 WHILE DRIVING. I WAS AT A TRAFFIC LIGHT ABOUT TO MAKE A LEFT TURN WHEN THE CAR SUDDENLY STALLED

| Subaru Legacy Complaints, Model Years 2015-2019 |
| --- |

**NHTSA ID Number: 10783002**
**Incident Date: October 15, 2015**
**Model: 2015 Legacy**

CAR ENGINE STALLED WHILE IN MOTION ON A CITY STEET. CAR WAS RESTARTED BUT ENGINE LIGHT WAS ON.

58.     The Subaru Recall hints that the problem is more widespread than what Denso and Subaru are actually reporting and acting on. During just an eight-month period – July 2019 to March 2020 – Subaru identified 33 unique dealer and non-dealer field reports indicative of the Fuel Pump Defect, 245 warranty claims

29

for a fuel pump replacement (excluding abnormal noise claims), and 1 complaint to NHTSA [VOQ].[18] Notably, these claims were made shortly after the recalled 2019 model vehicles entered the market demonstrating that the fuel pumps are failing well before they should, given their anticipated useful life.

59.    Subaru vehicles made with faulty Denso fuel pumps that were not included in the recall also may be at risk of failing their next California smog test and emissions tests required in other states, meaning owners and lessees will be unable to renew their vehicle registration.

60.    In conjunction with the recall, Subaru issued a Product Campaign Bulletin to address the Fuel Pump Impeller Failure.[19] In it, Subaru identified the safety recall as an emission related campaign and advised that owners would not be able to renew their registration if the repair was not made. It also warned that "[i]n addition, the State of California requires that every vehicle must pass an emission test (SMOG Check) every two years and before it is sold. **Without the repair we are providing at no charge, your vehicle may not pass this test**."[20]

61.    For those fortunate enough to be included in the Subaru Recall but who previously paid to remedy the Fuel Pump Defect the Subaru Recall is also inadequate.

---

[18]       https://static.nhtsa.gov/odi/rcl/2020/RCLRPT-20V218-1477.PDF

[19]       https://static.nhtsa.gov/odi/rcl/2020/RCMN-20V218-4406.pdf

[20]       https://static.nhtsa.gov/odi/rcl/2020/RCRIT-20V218-7149.pdf

00165565

62.     For covered vehicles, Subaru will replace the low pressure fuel pump with an improved part at no cost. However, those who previously paid for repairs are eligible for reimbursement only if they can provide an original service repair order that identifies the name of the repair facility, date of repair, mileage at the time of repair, complete 17-digit vehicle identification number (VIN), and the owner or lessee name, correct mailing address and telephone number. This disadvantages those who elected to have their car repaired by a non-Subaru dealer and likely do not have a repair invoice or receipt that includes this detailed information.

## V.    THE FUEL PUMP DEFECT CREATES UNSAFE CONDITIONS

63.     The Fuel Pump Defect in the Subject Vehicles exposes occupants and others to extreme danger, or even death. A vehicle that stalls or suffers engine shutdown is at a heightened risk for collision.

64.     Defendants acknowledge that the Fuel Pump Defect exposes drivers, passengers and other vehicles to a risk of serious crash. Denso states that the result of an inoperative fuel pump includes "rough engine running, engine no start and/or vehicle stall while driving at low speed," and, worst, "a vehicle stall could occur while driving at higher speeds, increasing the risk of a crash."[21]  Subaru warns "an

---

[21]     https://static.nhtsa.gov/odi/rcl/2020/RCLRPT-20E026-9105.PDF

00165565

inoperative fuel pump may result in the engine stalling without the ability to restart the vehicle, increasing the risk of a crash."[22]

65.    Fuel pump failure can also prevent the driver from accelerating at the necessary and anticipated pace. Diminished acceleration ability creates unexpected hazards, startling drivers of Subject Vehicles and other drivers in their proximity.

66.    Defendants collectively designed, engineered, tested, validated, manufactured and placed in the stream of commerce the defective low pressure fuel pumps and Subject Vehicles with the Fuel Pump Defect in a manner that subjects Class members to an unreasonable risk of death or injury.

## VI.    DEFENDANTS' KNOWLEDGE OF THE FUEL PUMP DEFECT

67.    Denso is experienced in the design and manufacture of OE and aftermarket fuel pumps. It touts the "Denso Difference" claiming its auto parts are made with "Precision engineering. Advanced design. The highest OEM quality."[23] It tells customers "[b]ecause DENSO's rigorous manufacturing and testing process produces each fuel pump, you can be sure it meets our high standards for fit and performance." As part of its rigorous testing of fuel pumps and its ongoing relationships with manufacturer customers Denso, knew or should have known

---

[22]    https://static.nhtsa.gov/odi/rcl/2020/RCLRPT-20V218-1477.PDF

[23]    https://www.denso-am.eu/media/966284/dems180001mm-lr.pdf

00165565

about the Fuel Pump Defect months, if not years, before it initiated a recall on April 24, 2020.

68.    For instance, on October 18, 2018, almost two years before Denso recalled its low-pressure fuel pumps, it published a patent (along with Sumitomo Bakelite Co., Ltd.) for a new impeller made with a higher-density plastic compound and with improved mechanical strength.[24] The patent explains that a fuel pump has a "housing and impeller" and that an impeller may swell "due to the fuel and water contained in the fuel[.]" If an impeller swells too much it may come into contact with the housing and stop the "rotation of the impeller[.]" Denso noted that in recent years, it had used a resin that had proven to swell excessively. The new patent proposed an impeller made with a resin material capable of resisting absorption, suppressing the swelling of the impeller, and increasing the mechanical strength through greater density.

69.    The problem identified in the patent is very similar to the language used in Denso's April 2020 recall of its low pressure fuel pumps where Denso determined that low-density impellers in the fuel pump could experience deformation due to excessive fuel absorption caused by higher levels of surface cracking. Excessive cracking was observed on (1) impellers that were made with a lower density and which had a lower surface strength, and also on (2) impellers

---

[24]    US 2018/0298857, Impeller for Fuel Pump, publ. Oct. 18, 2018

33

that were made with a lower density and were exposed to production solvent drying for a longer period of time.

70.     Subaru is also experienced in the design and manufacture of consumer vehicles. In keeping with industry standards, Subaru provides specifications for component parts to the suppliers; reviews the design record, manufacturer control plans, and validation reports produced by suppliers; conducts tests, including pre-sale durability tests, on incoming components to verify the parts are free from defect and comply with its specifications; issues final approval of the parts; and purchases them for installation in its vehicles. As such, Subaru knew or should have known about the Fuel Pump Defect and that it was prone to put drivers in a dangerous position due to the inherent risk of the defect.

71.     In addition, upon information and belief, Subaru became aware of the Fuel Pump Defect through sources not available to Plaintiff and Class members years before the limited recall it announced in April 2020, including, but not limited to, design failure mode and analysis data, pre-production testing, industry knowledge about the importance of selecting the proper materials, visits to Denso factories to observe its manufacturing practices, early consumer complaints made exclusively to Subaru's network of dealers and directly to Subaru, aggregate warranty data compiled from Subaru's network of dealers, testing conducted by

00165565

Subaru in response to consumer complaints, and repair order and parts data received by Subaru from Subaru's network of dealers.

72.     Further, federal law requires automakers like Subaru to be in close contact with NHTSA regarding potential defects. *See* TREAD Act, Pub. L. No. 106-414, 114 Stat. 1800 (2000). Accordingly, Subaru should and presumably does monitor NHTSA databases for consumer complaints regarding their automobiles as part of their obligation to identify potential defects in their vehicles, such as the Fuel Pump Defect.

73.     From its monitoring of the NHTSA databases, Subaru knew or should have known of the many Fuel Pump Defect complaints lodged, such as those quoted in paragraph 57 above. However, Subaru failed to act on that knowledge by warning Class members.

74.     Although they knew about the Fuel Pump Defect, Denso and Subaru waited months (if not years) to issue their recalls knowing Subject Vehicles with unsafe and defective fuel pumps were being driven by unsuspecting owners and lessees. Subaru issued its recall on April 16, 2020, and Denso formally recalled its fuel pumps on April 24, 2020. Meanwhile, Toyota issued a recall for the same defective fuel pumps on January 13, 2020, over three months before Denso and Subaru.

00165565

75.     Further, even though Subaru announced the recall on April 16, 2020, replacement parts to complete the recall were not available until June 4, 2020, over a month later. In conjunction with the recall, Subaru issued a Product Campaign Bulletin to address the Fuel Pump Impeller Failure.[25] The initial bulletin dated April 23, 2020, and sent to Subaru retailers, said that remedy parts would not be available until later that month and labeled the recall as "Open – Remedy Not Yet Available." On May 7, 2020, Subaru changed the status of the recall to "Open – Limited Parts Available" explaining that a limited supply of parts had become available to support repairs but were to be used only on affected vehicles presented for other services prior to owner notification. Sufficient remedy parts did not become available until June 4, 2020, at which point Subaru modified its Bulletin and changed the status of the recall to "Open." Subaru did not begin notifying affected vehicle owners until June 4, 2020.

76.     Despite admitting that the Fuel Pump Defect creates a safety hazard, Subaru never advised owners or lessees to stop driving affected vehicles until the Fuel Pump Defect could be repaired or replaced. Instead, Subaru continues to represent that its vehicles are safe and that it is an industry-leader in safety innovations.

---

[25]     https://static.nhtsa.gov/odi/rcl/2020/RCRIT-20V218-7149.pdf

00165565

## VII. DEFENDANTS BUILT THEIR REPUTATIONS ON THE SAFETY AND RELIABILITY OF THEIR PRODUCTS

77. Denso's reputation is built on reliability. Denso considers itself "one of the world's largest automotive component suppliers of advanced automotive technology and systems" and claims to "supply every major auto manufacturer in the world, providing them with the quality and innovation they need to remain on the leading edge of automotive technology" and who "[f]or decades [] [has] helped all of our customers to become giants in their industries.]" Denso touts its "commitment to quality, innovation, and advanced technology [] [as] the reason our automotive and heavy-duty components truly are better by design."[26]

78. According to Denso, "Not All Fuel Pumps are Created Equal" and "DENSO's proprietary turbine pump technology delivers the highest sustained fuel pressures in the industry, and this is why our pumps are chosen as standard equipment by the world's most demanding OEMs, especially for their premium vehicles."[27]

79. Denso repeatedly promotes the advanced design and technology of its fuel pumps. The armature (number 1 in below diagram) is "[u]ltra high balanced to minimize noise and vibration[,]" the turbine technology (2) "[d]elivers fuel with minimal pressure pulsation for quieter operation[,]" the check valve

---

[26]   http://oemfuelpump.com/portfolio.html

[27]   https://densoautoparts.com/fuel-pumps.aspx

00165565

(3) "[m]aintains consistent system pressure for superior hot fuel handling characteristics[,]" the relief valve (4) "[p]rotects the fuel delivery system[,]" the choke coils (5) "[m]inimize radio interference[,]" and the brushes (6) are "[d]esigned for durability, efficiency, and low-resistance operation."[28]

 

80.    Denso customers are assured that "because DENSO's rigorous manufacturing and testing process produces each fuel pump, you can be sure it meets our high standards for fit and performance."[29] "Tests have proven DENSO Fuel Pumps offer more than triple the lifetime with the same flow performance and half the power consumption of competitive fuel pumps[.]"[30]

81.    In a similar vein, Subaru has branded itself as the maker of safe and dependable vehicles, spending millions of dollars on extensive marketing and advertising campaigns to cement the association of safety and reliability with Subaru, including the Subject Vehicles.

82.    Subaru's reputation is built on safety. Subaru claims to be "committed to driver safety" and describes its design philosophy as "Safety First." According

---

[28]    *Id*.

[29]    https://www.amazon.com/Denso-953-4101-Fuel-Pump/dp/B000TGPCIA

[30]    https://densoautoparts.com/fuel-pumps.aspx

00165565

to Subaru: "There's safe, and then there's SUBARU SAFE. When you choose a Subaru, you're not just choosing a car. You're choosing a company with a lifetime commitment to protecting those you love."[31] Subaru's website reinforces this message:[32]



83.    On February 14, 2020, Alan Bethke, Senior Vice Present of Marketing for Subaru of America, reiterated Subaru's philosophy on safety, stating:

> At Subaru, we are proud to produce safe and reliable vehicles that, time and again, have given our owners the ability to create their own adventures and memories. [] The Outback has earned the highest model loyalty in its class for the past three years, and our latest Outback advertising campaign reinforces our commitment to creating vehicles that not only keep our owners safe on the road, but also enhance their lives.[33]

84.    Subaru was touting the safety and reliability of its vehicles, including the Subject Vehicles, as far back as 2013.

---

[31]    https://www.subaru.com/safety

[32]    *Id.*

[33]    http://media.subaru.com/pressrelease/1580/122/subaru-unveils-all-new-marketing-campaign-reveal-most

00165565

85.    Subaru promotes its 4-pronged approach to safety, which it describes as "Primary Safety," "Active Safety," "Preventive Safety," and "Passive Safety" all of which combine to create "All-Around Safety."

86.    The "Primary Safety" concept considers safety from the primary stages of the vehicle's design such as form and operation.[34] The "Active Safety" concept aims to improve collision avoidance on the road: "SUBARUs designed with such a high level of basic functionality are also designed to avoid dangerous situations with an outstanding reputation for safety."[35] "Preventive Safety" strives to prevent accidents through the use of advanced technologies and "Passive Safety" aims to protect passengers in the event of a collision, "[d]esigning every aspect of the car with the aim of guaranteeing utmost safety is a collision safety concept that is unique to SUBARU."[36]

87.    Subaru says it has "spent a long time fine-tuning [] [its] 'All-Around Safety' system which protects people from any danger in any situation[]" and describes how it has been "considering safety from many angles in order to deliver 'Enjoyment and Peace of Mind' to all passengers who ride in Subaru vehicles, and to achieve [] [its] ultimate goal of creating a traffic accident-free society."[37]

---

[34]    https://www.subaru-global.com/technology/safety/primarysafety.html

[35]    https://www.subaru-global.com/technology/safety/activesafety.html

[36]    https://www.subaru-global.com/technology/safety/

[37]    *Id.*

00165565

88.   Subaru also promotes its "high-efficiency powertrain with minimal waste" describing how "[t]he key lies with just how much power the engine can generate from a minimal quantity of fuel, and how that power can be transmitted to the wheels without any loss through the transmission system. Subaru continues to fine-tune the technology behind the engine and transmission with the belief that they can be engineered to deliver the level of drivability that Subaru strives for, without having a detrimental impact on the environment."[38]

89.   Subaru's marketing of the Subject Vehicles and Denso's marketing of the defective fuel pumps is replete with assurances about their safety and reliability. But a vehicle that can suddenly stall and lose power during normal operating conditions is inherently unsafe and renders their marketing untrue and materially misleading. Plaintiff and other Class members have been damaged as a result.

90.   Despite these assurances Subaru was secretly aware that its suppliers were not meeting quality standards. In 2019, an internal Subaru report that was leaked to an automotive industry publication found that "nearly half of Subaru's suppliers were recently operating at quality levels below Subaru's internal

---

[38]   https://www.subaru-global.com/technology/environment/highefficiency.html

target."[39] Subaru's 2019 Annual Report to investors noted that fiscal year 2019 was, "a year in which latent issues at SUBARU came to light, which enabled us to confirm that we are moving in the right direction with corporate culture reforms, quality reforms," and mid-term management revisions.[40]

91.    The average consumer researching the safety of a vehicle would not come across these materials and thus would remain unaware that Subaru is aware of systemic quality control issues during the time frame in which the defective Denso fuel pumps were made. Instead, consumers would see only Subaru's public proclamations of its vehicles' safety.

## VIII.  WARRANTY COVERAGE FOR THE FUEL PUMP DEFECT

92.    Subaru's New Vehicle Limited Warranty "covers any repairs needed to correct defects in material or workmanship reported during the applicable warranty period and which occur under normal use[.]" The warranty provides basic coverage for 3 years or 36,000 miles, whichever comes first. The "entire vehicle is covered" subject to exclusions listed in the warranty. Subaru's warranty promises that "[d]efective parts will be repaired or, at the option of SOA [Subaru of America] or your Authorized SUBARU Retailer, replaced with new or remanufactured parts without charge to you for labor and materials."

---

[39]    Hans Greimel, "Behind the Scenes, Subaru Races to Boost Quality," Auto. News, June 24, 2019.

[40]    Subaru Annual Report, 2019, at 8.

93.     Because the Fuel Pump Defect often arises outside the warranty period, owners are on the hook to pay to repair this defect, which Defendants have known about for months, if not years. Repair and replacement can cost upwards of hundreds of dollars. Subaru's Product Campaign Recall with instructions to dealer technicians on how to complete the recall repair shows the many steps involved in performing this repair.

94.      Defendants know the Fuel Pump Defect affects more makes, models and years of vehicles than were included in the Denso and Subaru Recalls leaving owners and lessees on the hook to pay hundreds of dollars to repair this defect.

## CLASS ACTION ALLEGATIONS

95.     Plaintiff brings this class action pursuant to Fed. R. Civ. P. 23(a), (b)(2), (b)(3) on behalf of a proposed Nationwide Class defined as:

> All persons who purchased or leased a Subject Vehicle for end use and not for resale in the United States, the District of Columbia, Puerto Rico, or any other United States territory or protectorate.

96.     Alternatively, Plaintiff alleges a Hawaii multistate class ("Hawaii Class") defined as:

> All persons who purchased or leased a Subject Vehicle for end use and not for resale in Hawaii and other states with similar laws.

Excluded from the Class are: (a) Defendants officers, directors, and employees; (b) judicial officers assigned to this case; (c) governmental entities; and (d) persons who timely and properly exclude themselves from the Class.

00165565

97.     Certification of Plaintiff's claims for classwide treatment is appropriate because Plaintiff can prove the elements of his claims on a classwide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

98.     **Numerosity – Federal Rule of Civil Procedure 23(a)(1).** Each Class consists of thousands of people. The precise number of Subject Vehicles is unknown to Plaintiff but may be ascertained from Defendants' books and records. Therefore, each Class is so numerous that joinder of all members would be impracticable.

99.     **Commonality and Predominance – Federal Rule of Civil Procedure 23(a)(2) and 23(b)(3)**. This action involves common questions of law and fact that predominate over any questions affecting individual Class members, including:

a.   whether Defendants engaged in the conduct alleged herein;

b.   whether Defendants' alleged conduct violates applicable law;

c.   whether Defendants designed, advertised, marketed, distributed, leased, sold, or otherwise placed the Subject Vehicles into the stream of commerce in the United States;

d.   whether Defendants made false or misleading statements about the quality and safety of the Subject Vehicles;

00165565

e.   whether the Subject Vehicles contain the Fuel Pump Defect;

f.   whether Defendants had actual or implied knowledge about the alleged defect but failed to disclose it to Plaintiff and members of each Class;

g.   whether Defendants' omissions and concealment regarding the quality of the Subject Vehicles were likely to deceive the Class members in violation of the state consumer protection statutes alleged herein;

h.   whether Subaru breached its express warranties with respect to the Subject Vehicles;

i.   whether Subaru breached its implied warranties with respect to the Subject Vehicles;

j.   whether the members of each Class are entitled to damages, restitution, disgorgement, statutory damages, exemplary damages, equitable relief, and/or other relief; and

k.   the amount and nature of relief to be awarded to Plaintiff and members of each Class.

100.   Defendants engaged in a common course of conduct giving rise to the legal rights sought to be enforced by Plaintiff, individually and on behalf of the other Class members.  Similar or identical statutory and common law violations, business practices, and injuries are involved.  Individual questions, if any, pale by

00165565

comparison, in both quality and quantity, to the numerous common questions that dominate this action.

101. **Typicality – Federal Rule of Civil Procedure 23(a)(3).** Plaintiff's claims are typical of the claims of the other Class members because, among other things, Plaintiff and the other Class members were injured through Defendants' substantially uniform misconduct described above. Plaintiff advanced the same claims and legal theories on behalf of himself and all other Class members, and no defense is available to Defendants that is unique to Plaintiff.

102. **Adequacy of Representation – Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate representative of each Class because his interests do not conflict with the interests of the other Class members. Additionally, Plaintiff has retained counsel competent and experienced in complex class action litigation. Thus, the interests of each Class will be fairly and adequately protected by Plaintiff and his counsel.

103. **Declaratory and Injunctive Relief – Federal Rule of Civil Procedure 23(b)(2).** Defendants have acted or refused to act on grounds generally applicable to Plaintiff and the other members of each Class, thereby making appropriate final injunctive relief and declaratory relief, as described below, for the Nationwide and Hawaii Class members as a whole.

00165565

104. **Superiority – Federal Rule of Civil Procedure 23(b)(3)**. A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this matter as a class action. The damages, harm, or other financial detriment suffered individually by Plaintiff and the other Class members are relatively small compared to the burden and expense that would be required to litigate their claims on an individual basis against Defendants, making it impracticable for Class members to individually seek redress for Defendants' wrongful conduct. Even if Class members could afford individual litigation, the court system should not be forced to shoulder such inefficiency. Individualized litigation would create a potential for inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. By contrast, the class action device presents far fewer management difficulties, providing the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

///

///

///

///

///

47

00165565

## CAUSES OF ACTION

### COUNT I

### VIOLATION OF HAWAII'S UNFAIR DECEPTIVE ACTS AND PRACTICES STATUTE

**H.R.S. §§ 480-1,** *et seq.*

**(On Behalf of Plaintiff Roman Anderson and the Nationwide Class or, Alternatively, the Hawaii Class as to All Defendants)**

105.   Plaintiff repeats and realleges all other paragraphs as fully set forth herein.

106.   This cause of action is brought pursuant to Hawaii's Unfair Deceptive Acts and Practices Statute ("UDAP"), H.R.S. §§ 480-1, *et seq*.

107.   Plaintiff brings this claim individually and on behalf of members of the Nationwide Class, or, alternatively the Hawaii Class.

108.   Plaintiff and each of the Class members are "consumers," as the term is defined by H.R.S. § 480-1, because they are natural persons who purchased or leased one or more Subject Vehicles equipped with defective Denso low pressure fuel pumps, primarily for personal, family, or household purposes.

109.   The conduct alleged in this Complaint constitutes unfair and deceptive acts and practices for the purpose of the UDAP because the conduct was undertaken by Defendants in the conduct of their trade and commerce.

110.   Defendants' conduct, as described herein, in misrepresenting that the Subject Vehicles are safe and reliable, and omitting the fact that they designed,

manufactured, distributed and sold Subject Vehicles with a Fuel Pump Defect that causes the fuel pump to fail prematurely, violates H.R.S. § 480-2(a) prohibiting "[u]nfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce are unlawful."

111.   In the course of conducting business, Defendants committed "unfair" business practices by, among other things, making the representations and omissions of material facts that Subject Vehicles were safe and reliable. During any one of Plaintiff's interactions with Subaru dealerships, Subaru and/or Denso could have disclosed the material fact of the Fuel Pump Defect, and that would have resulted in Plaintiff receiving the information. There is no societal benefit from such false and misleading representations and omissions—only harm. While Plaintiff and the other Class members were harmed by this conduct, Defendants were unjustly enriched. As a result, Defendants' conduct is "unfair," as it has offended an established public policy. Further, Defendants engaged in immoral, unethical, oppressive, and unscrupulous activities that are substantially injurious to consumers. There were reasonably available alternatives to further Defendants' legitimate business interests other than the conduct described.

112.   Defendants' actions, claims, omissions, and misleading statements were also false or misleading and likely to deceive the consuming public within the meaning of H.R.S. § 480-2(a).

00165565

113.   Plaintiff, in fact, has been deceived as a result of his reliance on Defendants' material representations and omissions, which are described above. Plaintiff has suffered injury in fact and lost money as a result of purchasing or leasing his Subject Vehicle. Such injury includes paying more for a Subject Vehicle than he should have, diminished value of his Subject Vehicle, and other damages proximately caused by Defendants' misconduct as alleged herein.

114.   Defendants acts were deceptive because their misrepresentations and omissions were material and were likely to mislead reasonable consumers.

115.   Defendants willfully engaged in the above-described unfair and deceptive acts and practices constituting violations of the UDAP. Defendants knew or should have known that their unfair and deceptive acts and practices were frivolous and malicious.

116.   Pursuant to H.R.S. § 480-13(b)(1) and (c), Plaintiff seeks compensatory damages of threefold the damages incurred by himself and each Class member in purchasing Subject Vehicles with the Fuel Pump Defect, as well as reasonable attorney's fees together with costs.

117.   Unless restrained and enjoined, Defendants will continue to engage in the above-described conduct. Accordingly, injunctive relief is appropriate. Plaintiff, on behalf of himself, all others similarly situated, and the general public, seek restitution from Defendants of all money obtained from Plaintiff and other

00165565

Class members as a result of their unfair competition, an injunction prohibiting Defendants from continuing such practices, corrective advertising, and all other relief this Court deems appropriate, consistent with H.R.S. § 480-13(b)(2) and (c).

## COUNT II

### VIOLATION OF HAWAII'S UNFAIR DECEPTIVE ACTS & PRACTICES STATUTE

**H.R.S. §§ 481A, *et seq*.**

**(On Behalf of Plaintiff Roman Anderson and the Nationwide Class or, Alternatively, the Hawaii Class as to All Defendants)**

118. Plaintiff repeats and realleges all other paragraphs as fully set forth herein.

119. This cause of action is brought pursuant to Hawaii's UDAP, H.R.S. §§ 481A-1, *et seq*.

120. Defendants are "persons" under H.R.S. § 481A-2 because they are corporations.

121. Defendant violated the UDAP by misrepresenting and omitting material facts regarding Subject Vehicles, and by engaging in the following practices proscribed by H.R.S. § 481A-3 in transactions that were intended to result in, and did result in, the sale of Subject Vehicles:

    a. representing that Subject Vehicles have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities that they do not have;

b.   representing that Subject Vehicles are of a particular standard, quality, or grade if they are of another;

c.   advertising Subject Vehicles with intent not to sell them as advertised; and

d.   engaging in any other conduct which similarly creates a likelihood of confusion or of misunderstanding.

122.   Defendants violated the UDAP by selling Subject Vehicles they knew possessed a uniform Fuel Pump Defect that causes the fuel pump to fail prematurely and could cause the Subject Vehicles to experience a check engine warning light malfunction or cause the indicator light to illuminate, the engine to run rough, the engine not to start and/or the vehicle to stall while driving at low or high speeds, exposing drivers, passengers and other vehicles on the road to an unreasonable safety risk. Defendants omitted from Plaintiff and the other Class members, to whom they had a duty to disclose, the material fact that Subject Vehicles were sold with a Fuel Pump Defect that created an unreasonable safety risk. This is a fact that a reasonable consumer would consider important in selecting a vehicle to purchase or lease.

123.   During any one of Plaintiff's interactions with Subaru dealers, Subaru and/or Denso could have disclosed the material fact of the Fuel Pump Defect, and that would have resulted in Plaintiff receiving the information.

00165565

124.   Pursuant to H.R.S. § 481A-4(a), Plaintiff, individually, and on behalf of the other Class members, seeks a court order enjoining the above-described wrongful acts and practices of Defendants, ordering Defendants to extend repair remedies to all Class members who have the Fuel Pump Defect, and awarding restitution and disgorgement.

125.   Pursuant to H.R.S. § 481A-4(b), Plaintiff, individually and on behalf of the other Class members, seeks reasonable attorney's fees together with costs of suit. Defendants willfully engaged in the above trade practices knowing them to be deceptive.

## COUNT III

### BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
### H.R.S. § 490:2-314
**(On Behalf of Plaintiff Roman Anderson and the Nationwide Class
or, Alternatively, the Hawaii Class as to Defendant Subaru)**

126.   Plaintiff repeats and realleges all other paragraphs as fully set forth herein.

127.   Defendant Subaru is and was, at all relevant times, a "merchant" with respect to Subject Vehicles as defined by H.R.S. § 490:2-104, and manufactured, distributed, warrantied and/or sold Subject Vehicles.

00165565

128.   Pursuant to H.R.S. § 490:2-314, a warranty that Subject Vehicles were in merchantable condition and fit for the ordinary purposes for which they were sold or leased was implied by law in the instant transactions.

129.   Plaintiff and the other Class members purchased or leased Subject Vehicles manufactured and sold by Defendant Subaru in consumer transactions.

130.   Subject Vehicles, when sold and at all times thereafter, were not in merchantable condition and not fit for the ordinary purpose for which cars are used.  Subject Vehicles left Defendant's possession and control with a Fuel Pump Defect that causes the fuel pump to fail prematurely and renders them at all times thereafter unmerchantable, unfit for ordinary use, unsafe, and a threat to public safety.  Plaintiff and the other Class members used their Subject Vehicles in the normal and ordinary manner for which Subject Vehicles were distributed and advertised.

131.   Defendant Subaru knew before selling or leasing the Subject Vehicles to Plaintiff and the other Class members, or earlier, that the Subject Vehicles were manufactured with a Fuel Pump Defect that may cause the vehicles to among other things stall while driving, rendering Subject Vehicles unfit for their ordinary purpose.

132.   Despite Plaintiff's and the other Class members' normal and ordinary use, maintenance, and upkeep, the Subject Vehicles had a Fuel Pump Defect that

00165565

existed at the time Defendant transferred Subject Vehicles from its possession or control. The defect rendered Subject Vehicles unfit for their ordinary use and incapable of performing the tasks they were distributed, sold, leased advertised, and sold to perform.

133.   As a result, the Subject Vehicles, including their low pressure fuel pumps and related components, are not of fair or average quality.  Nor would they pass without objection in the automotive industry. The fact that the Fuel Pump Defect may cause the Subject Vehicles to stall while driving renders the Subject Vehicles unsafe to drive, and requires repair or replacement before safe, ordinary use can resume.

134.   All conditions precedent have occurred or been performed.

135.   Defendant had actual notice of its breach of warranty. Through consumer complaints, warranty records, communications with its supplier (Denso), *inter alia*, Defendant knew of the defect, the existence and ubiquity of which it knew much earlier. Its implementation of the Subaru Recall and the corresponding Product Campaign Bulletin issued to Subaru retailers shows actual notice.

136.   Defendant's warranty disclaimers, exclusions, and limitations, to the extent that they may be argued to apply, were, at the time of sale, and continue to be, unconscionable and unenforceable to disclaim liability for a known, latent defect.  Defendant knew when it first issued these warranties and their limitations

55

that the defect existed, and the warranties might expire before a reasonable consumer would observe or experience the defect. Defendant also failed to take necessary actions to adequately disclose or cure the defect after the existence of the defect came to the public's attention, and squandered its reasonable opportunity to cure or remedy the defect, its breaches of warranty, and consumers' losses. Under these circumstances, it would be futile to enforce any informal resolution procedures or give Defendant any more time to cure the defect, cure its breaches of warranty, or otherwise attempt to resolve or address Plaintiff's and the other Class members' claims.

137.   As a direct and foreseeable result of the Fuel Pump Defect in Subject Vehicles, Plaintiff and the other Class members have suffered diminution in the value of Subject Vehicles, out-of-pocket losses related to repairing, maintaining, and servicing their defective Subject Vehicles, costs associated with arranging and obtaining alternative means of transportation, and other incidental and consequential damages recoverable under the law.

138.   Plaintiff and the other Class members have had sufficient direct dealings with Defendant or its agents (dealerships) to establish privity of contract between themselves and Defendant. Privity, nevertheless, is not required in this case because Plaintiff and the other Class members were intended third-party beneficiaries of contracts between Defendant and its dealers; specifically, they are

the intended beneficiaries of Defendant's implied warranties. The dealers were not intended to be the ultimate consumers of Subject Vehicles; the warranty agreements were designed for, and intended to benefit, only the ultimate consumers—such as Plaintiff and the other Class members. Privity is also not required because Plaintiff's and the other Class members' Subject Vehicles are inherently dangerous due to the aforementioned defects and nonconformities.

## COUNT IV

## **BREACH OF EXPRESS WARRANTY**

### **H.R.S. § 490:2-313**

**(On Behalf of Plaintiff Roman Anderson and the Nationwide Class or, Alternatively, the Hawaii Class as to Defendant Subaru)**

139.   Plaintiff repeats and realleges all other paragraphs as fully set forth herein.

140.   Defendant Subaru is and was, at all relevant times, a "merchant" with respect to Subject Vehicles as defined by H.R.S. § 490:2-104, and manufactured, distributed, warrantied and/or sold Subject Vehicles.

141.  When marketing, distributing, and selling Subject Vehicles, Defendant expressly warranted that each provided 36 months or 36,000 miles of comprehensive coverage, whichever occurred first, during which time Subaru represented it would cover the cost of any repair or replacement necessary due to a defect in materials or workmanship relating to Subject Vehicles.

00165565

142.   Defendant knew that the Subject Vehicles had the Fuel Pump Defect at the time of sale. Defendant breached express warranties when Defendant delivered Subject Vehicles that did not conform to its affirmations of fact and industry standards. Specifically, the Subject Vehicles were not safe for ordinary use contrary to Subaru's decades long advertising campaign and other written and oral representations that promote above all else its commitment to designing and manufacturing vehicles that are safe and reliable.

143.   Subaru breached the express warranty to repair the defects in Subject Vehicles, because it failed to adequately repair the Fuel Pump Defect that causes the fuel pump to fail prematurely in Subject Vehicles to ensure such vehicles did not experience illumination of the check engine light and/or master warning indicators, rough engine running, engine no start and worst of all, vehicle stall while driving.

144.   Specifically, despite Defendant's knowledge of the problem and opportunity to cure (as evidenced by the Subaru Recall and Product Campaign Bulletin), Defendant failed to notify Plaintiff and the other members of the Class of the defect and to adequately repair, at no charge to the Class, the Fuel Pump Defect.

145.   All conditions precedent have occurred or been performed.

146.  Defendant had actual notice of its breach of warranty. Through consumer complaints, warranty records, communications with its supplier (Denso), *inter alia*, Defendant knew of the defect, the existence and ubiquity of which it knew much earlier. Its implementation of the Subaru Recall and the corresponding Product Campaign Bulletin issued to Subaru retailers shows actual notice.

147.  Defendant's warranty disclaimers, exclusions, and limitations, to the extent that they may be argued to apply, were, at the time of sale, and continue to be unconscionable and unenforceable to disclaim liability for a known, latent defect.  Defendant knew when it first made these warranties and their limitations that the defect existed and that the warranties might expire before a reasonable consumer would notice or observe the defect. Defendant also failed to take any actions to adequately disclose or cure the defect after the existence of the defect came to the public's attention and sat on its reasonable opportunity to cure or remedy the defect, its breaches of warranty, and consumers' losses. Under these circumstances, it would be futile to enforce any informal resolution procedures or give Defendant any more time to cure the defect, its breaches of warranty, or otherwise attempt to resolve or address Plaintiff's and the other Class members' claims.

148.  Plaintiff and the other Class members were damaged as a result of Subaru's breach of express warranty because the fuel pump and related

00165565

components on Subject Vehicles are defective, compromising the safety of the vehicles' drivers and passengers, and requiring repair of Subject Vehicles' for the Fuel Pump Defect.

149.   As a direct and foreseeable result of Defendant's failure to repair Subject Vehicles, Plaintiff and the other Class members suffered diminution in the value of Subject Vehicles, out-of-pocket losses related to the repairing, maintaining, and servicing their defective Subject Vehicles, costs associated with arranging other forms of transportation, and other incidental and consequential damages recoverable under the law.

## COUNT V

## <u>DECLARATORY RELIEF</u>

**(On Behalf of Plaintiff Roman Anderson and the Nationwide Class or, Alternatively, the Hawaii Class Against All Defendants)**

150.   Plaintiff repeats and realleges all paragraphs as fully set forth herein.

151.   Pursuant to 28 U.S.C. § 2201, the Court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."

152.   Defendants marketed, distributed, and sold Subject Vehicles equipped with a Fuel Pump Defect.

153.   Accordingly, Plaintiff, individually and on behalf of the other Class members, seeks entry of the following declarations: (a) the model year 2015-2019

Subaru Impreza, Ascent, Legacy, Outback, Forester, Crosstrek and WRX vehicles contain a Fuel Pump Defect; (b) all persons who purchased or leased model year 2015-2019 Subaru Impreza, Ascent, Legacy, Outback, Forester, Crosstrek and WRX vehicles must be provided the best practicable notice of the defect, the cost of which shall be borne by Defendants; and (c) Defendants must establish an inspection, repair, and replacement program and protocol, and notify all Class members of such program and protocol, pursuant to which Defendants, including their authorized representatives, and at no cost to Class members, will inspect, upon request, Class members' Subject Vehicles for the Fuel Pump Defect and repair or replace the fuel pump and related components on Subject Vehicles, and related defect manifestations.

## <u>REQUESTS FOR RELIEF</u>

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests that the Court enter an Order:

  a.   certifying the proposed Nationwide Class, or alternately the proposed Statewide Class under Federal Rule of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), as requested herein, and appointing their counsel as Class Counsel;

  b.   appointing Plaintiff as Class Representative;

61

c.      finding that Defendants engaged in the unlawful, unfair and deceptive conduct as alleged herein;

d.      awarding Plaintiff and the other Class members damages;

e.      awarding Plaintiff and the other Class members restitution and disgorgement of monies Defendants acquired through their violations of the law;

f.      awarding Plaintiff and the other Class members injunctive and declaratory relief including requiring Defendants to promptly and fully inform Class members of the Fuel Pump Defect and its associated dangers and instructing such Class members to cease driving their vehicles, and ordering Defendants to provide free loaner vehicles of comparable make, model, or value to the Subject Vehicle each Class member owns or leases until a remedy for the Fuel Pump Defect is installed in the Subject Vehicles;

g.      requiring Defendants to repair or replace the Fuel Pump Defect on Subject Vehicles;

h.      awarding Plaintiff and the other Class members pre-judgment and post-judgment interest on all amounts awarded;

i.      awarding Plaintiff and the other Class members reasonable attorneys' fees, costs, and expenses; and

00165565

j.      granting such other relief the Court deems just and appropriate.

## JURY TRIAL DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial

by jury on all claims so triable.

DATED: Honolulu, Hawaii, June 26, 2020.

*/s/  Steven K. S. Chung*

STEVEN K. S. CHUNG
TIMOTHY E. HO
TIMOTHY G. BLOOD(*PHV forthcoming*)
PAULA R. BROWN (*PHV forthcoming*)
JENNIFER L. MacPHERSON
   (*PHV forthcoming*)
COURTNEY L. DAVENPORT
MICHAEL T. FRASER (*PHV forthcoming*)

*Attorneys for Plaintiff*
ROMAN ANDERSON

00165565